Filed 8/25/20  The Affordable Housing Coalition of San Diego County v. Drager CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE AFFORDABLE HOUSING COALITION OF SAN DIEGO COUNTY, | C083811 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2012-80001158-CU-WM-GDS) |
| v. | |
| TRACY DRAGER, as Auditor-Controller, etc. et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | |
| MICHAEL COHEN, as Director, etc., et al., | [NO CHANGE IN JUDGMENT] |
| Real Parties in Interest and Respondents. | |

THE COURT:

It is ordered that the opinion filed in this case on July 29, 2020, be modified as follows:

On page 2, remove the last sentence before the first full paragraph that begins with "Although the Coalition acknowledges" and replace with the following:

Although the Coalition acknowledges that "housing successors" are now responsible for complying with affordable housing requirements under the dissolution law, the Coalition nevertheless seeks to hold "successor agencies" responsible for including projects and/or funds needed to meet the affordable housing requirements the former

1

redevelopment agencies did not complete at the time of dissolution in the initial

recognized obligation payment schedules.

On page 3, first full paragraph, remove "(5) the Coalition does not cite evidence in the appellate record establishing binding and enforceable agreements subject to section 34171, subdivision (d)(1)(E);" and replace with the following:

(5) aside from "implied statutory contracts," the second amended writ petition does

not allege and the Coalition does not cite any portion of the appellate record

establishing binding and enforceable agreements subject to section 34171,

subdivision (d)(1)(E);

On page 4, first sentence under subsection B, remove "33399, which constitute" and replace with "former 33985, which constituted" so that the sentence now reads:

Sections 33000 through former 33985, which constituted Part 1 of Division

24 of the Health and Safety Code, comprise the Community Redevelopment

Law.

On page 7, footnote 2, third sentence, add "initial" before "ROPS to identify" so that the sentence now reads:

The second amended writ petition seeks to compel successor agencies to amend the

initial ROPS to identify past, unmet affordable housing requirements.

On page 17, second full paragraph under part V, remove third sentence that begins with "We conclude" and replace with the following:

We conclude that aside from "implied statutory contracts," which we discuss below in

connection with the Coalition's constitutional claim, the second amended writ petition

does not allege the existence of any legally binding and enforceable contract and the

Coalition does not cite any portion of the appellate record establishing binding and

enforceable agreements subject to section 34171, subdivision (d)(1)(E).

2

On page 18, second full paragraph, remove the second sentence that begins with "Although the Coalition" and replace with the following:

Although the second amended writ petition does not allege that any legally binding and enforceable contract, other than "implied statutory contracts," exist and the Coalition does not cite any portion of the appellate record establishing binding and enforceable agreements subject to section 34171, subdivision (d)(1)(E) in this case, it is possible that in another case, a successor agency could be responsible for an aspect of affordable housing based on the type of existing binding agreement referenced in section 34171, subdivision (d)(1)(E).

On page 18, third full paragraph, last sentence, remove "satisfy" and insert "include in the initial ROPS projects and/or funds to meet the" so that the sentence now reads:

However, section 34171, subdivision (d)(3) does not establish a legislative intent that a successor agency must, in the absence of an enforceable obligation, include in the initial ROPS projects and/or funds to meet the affordable housing requirements a former redevelopment agency did not complete when Assembly Bill 1X 26 took effect.

On page 19, second full paragraph, remove last sentence that begins with "In any event" and replace with the following:

In any event, section 34176.1, subdivision (a)(2) expressly pertains to a housing successor, and does not establish a legislative intent that a successor agency must include, in the initial ROPS, projects and/or funds for the affordable housing requirements a former redevelopment agency did not complete when Assembly Bill 1X 26 took effect.

On page 19, second full paragraph under part VII, second sentence, remove "established" and replace with "alleged" so that the sentence now reads:

> As we have indicated, although it has not been alleged in this case, a successor agency could be responsible for an aspect of affordable housing based on the type of existing binding agreement referenced in section 34171, subd. (d)(1)(E).

On page 20, remove last sentence before part VIII that begins with "Section 34183 does not mention" and replace with the following:

> Section 34183 does not mention affordable housing requirements a former redevelopment agency did not complete at the time Assembly Bill 1X 26 took effect, and neither section 34183 nor 34189 establish that successor agencies are necessarily responsible for those affordable housing requirements or must include projects and/or funds to meet those requirements in the initial ROPS.

This modification does not change the judgment.

The petition for rehearing is denied.

FOR THE COURT:


_____/S/_____
BLEASE, Acting P. J.


_____/S/_____
MAURO, J.


_____/S/_____
HOCH, J.

4

Filed 7/29/20  The Affordable Housing Coalition of San Diego County v. Drager CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE AFFORDABLE HOUSING COALITION OF SAN DIEGO COUNTY, | C083811 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2012-80001158-CU-WM-GDS) |
| v. | |
| TRACY DRAGER, as Auditor-Controller, etc. et al., | |
| Defendants and Respondents. | |
| MICHAEL COHEN, as Director, etc., et al., | |
| Real Parties in Interest and Respondents. | |

This case involves the affordable housing requirements in the Community Redevelopment Law (Health and Safety Code, §§ 33000 et seq.)[1] that former redevelopment agencies did not complete by June 29, 2011, the effective date of

---

[1] Undesignated statutory references are to the Health and Safety Code.

1

Assembly Bill No. 26 (2011-2012 1st Ex. Sess.) (Assembly Bill 1X 26). (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 5, § 1.) Plaintiff Affordable Housing Coalition of the County of San Diego (Coalition) is a nonprofit corporation that advocates for affordable housing for low income persons and families in San Diego County. It claims that each former redevelopment agency in San Diego County had failed to complete at least one affordable housing requirement under the Community Redevelopment Law when Assembly Bill 1X 26 became effective, and the Coalition brought this action to ensure that those affordable housing requirements are fulfilled. Although the Coalition acknowledges that "housing successors" are now responsible for complying with affordable housing requirements under the dissolution law, the Coalition nevertheless seeks to hold "successor agencies" responsible for the affordable housing requirements the former redevelopment agencies did not complete at the time of dissolution.

In support of its arguments, the Coalition asks us (1) to take judicial notice of certain legislative analyses of Assembly Bill 1X 26, of certain recognized obligation payment schedules, and of review letters for those schedules. In addition, the Coalition specifically contends that (2) the affordable housing requirements that former redevelopment agencies did not complete when Assembly Bill 1X 26 became effective are now enforceable obligations under section 34171, subdivision (d)(1)(C) because they are obligations imposed by state law; (3) money the former redevelopment agencies borrowed from the Low and Moderate Income Housing Fund (the Housing Fund) for payments benefitting schools are enforceable obligations under section 34171, subdivision (d)(1)(B); (4) payments required to be made to the Housing Fund, but deferred, are enforceable obligations under section 34171, subdivision (d)(1)(G); (5) money owed to the Housing Fund for loans to third parties to develop affordable housing, subsidies provided to home buyers, residual receipts and other amounts are enforceable obligations under section 34171, subdivision (d)(1)(E); (6) the legislative intent behind the dissolution law supports fulfillment of affordable housing responsibilities imposed on

2

redevelopment agencies before dissolution; (7) we must harmonize the definition of an enforceable obligation with sections 34176.1 and 34189; and (8) if the dissolution statutes do not require successor agencies to satisfy unmet affordable housing requirements, those statutes violate the constitutional prohibition against impairment of contracts.

We will (1) grant in part the Coalition's request for judicial notice. We further conclude that (2) the affordable housing requirements that former redevelopment agencies did not complete by the effective date of Assembly Bill 1X 26 are not obligations imposed by state law under section 34171, subdivision (d)(1)(C); (3) money the former redevelopment agencies borrowed from the Housing Fund for payments benefitting schools are enforceable obligations under section 34171, subdivision (d)(1)(G), provided the repayment schedule is approved by the oversight board; (4) certain amounts suspended but owing to the Housing Fund are enforceable obligations under section 34171, subdivision (d)(1)(G), provided the repayment schedule is approved by the oversight board; (5) the Coalition does not cite evidence in the appellate record establishing binding and enforceable agreements subject to section 34171, subdivision (d)(1)(E); (6) the Coalition does not establish a legislative intent that a successor agency must necessarily satisfy affordable housing requirements a former redevelopment agency did not complete when Assembly Bill 1X 26 took effect; (7) the statutes cited by the Coalition do not establish that successor agencies are necessarily responsible for affordable housing requirements; and (8) the Coalition does not establish how a law within the statutory scheme created an implied contract, nor does it establish substantial impairment of any such statutory contractual right.

We will reverse the judgment as to money the former redevelopment agencies borrowed from the Housing Fund for payments benefitting schools, and as to certain amounts suspended but owing to the Housing Fund. We will remand the matter to the

3

trial court for further consideration of those issues consistent with this opinion.  We will otherwise affirm the judgment.

APPLICABLE LAW

We begin with a description of the applicable law as an aid in understanding the background of this case.

A.  Standard of Review.

Although we accord some deference to an agency's interpretation of its governing statutes, the interpretation of statutes is ultimately subject to our de novo review.  (*Cuenca v. Cohen* (2017) 8 Cal.App.5th 200, 221 (*Cuenca*).)  We also review de novo questions regarding the constitutionality of a statute.  (*Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 90.)

B.  Affordable Housing Requirements under the Community Redevelopment Law.

Sections 33000 through 33399, which constitute Part 1 of Division 24 of the Health and Safety Code, comprise the Community Redevelopment Law.  (§ 33000.)  One of the purposes of redevelopment was to expand the supply of low and moderate income housing.  (§§ 33071, 33334.6, subd. (a).)  Accordingly, the Community Redevelopment Law required former redevelopment agencies to make deposits to the Housing Fund; replace dwelling units housing for persons of low or moderate income which were destroyed or removed as part of a redevelopment project; provide inclusionary housing; spend money in the Housing Fund to meet particular targets for housing for persons of low and very low income; and develop real property acquired with the Housing Fund money for housing affordable to persons of low and moderate income.  (§§ 33334.4, subd. (a), 33333.8, subd. (a)(1), 33334.16, 33413.)  Former redevelopment agencies were required to comply with the affordable housing requirements in the Community Redevelopment Law.  (§ 33333.8, subds. (a)-(c), (e), (f).)

In general, former redevelopment agencies had to deposit not less than 20 percent of the increment taxes allocated to them into the Housing Fund.  (§ 33334.2, subd. (a),

4

33334.3, subd. (a), 33334.6, subds. (c), (d), (e); *Cuenca, supra,* 8 Cal.App.5th at pp. 207, 210 [the requirement was in response to the perception that the redevelopment agencies were not funding low and moderate income housing projects].) Increment taxes refer to the increased property tax revenue resulting from the increase in value created by redevelopment in a project area. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 246-247 (*CRA*).) If less than 20 percent of the tax increment allocated to a former redevelopment agency was deposited in the Housing Fund, the agency was required to pay the deficit from tax increment allocated to it. (§ 33334.6, subds. (g), (h).)

Money in the Housing Fund had to be used to increase, improve and preserve the supply of low and moderate income housing unless certain findings obviating such need were made. (§§ 33334.2, subd. (a), 33334.3, subds. (a), (c), 33334.6, subd. (c).) Former redevelopment agencies could construct, rehabilitate or preserve affordable housing by acquiring real property or buildings or by providing subsidies to qualified persons. (§§ 33334.2, subd. (e), 33334.16, 33449.)

C. The Dissolution of Former Redevelopment Agencies.

The California Supreme Court has explained the history of redevelopment in this state and the events leading to the demise of former redevelopment agencies, and we will not repeat that detailed explanation here. (*CRA, supra,* 53 Cal.4th at pp. 242-252.)

Assembly Bill 1X 26 added Parts 1.8 and 1.85 to Division 24 of the Health and Safety Code. (Assem. Bill 1X 26, §§ 6-7.) Part 1.8 (§§ 34161-34169.5, also known as the "freeze" provisions) suspended the operations of former redevelopment agencies prior to their dissolution. (Assem. Bill 1X 26, § 6; *CRA, supra,* 53 Cal.4th at p. 250.) The Legislature intended Part 1.8 to preserve, to the maximum extent possible, the revenues and assets of former redevelopment agencies. (§ 34167, subd. (a); Assem. Bill 1X 26, § 6.)

Former redevelopment agencies were required to adopt an enforceable obligation payment schedule (EOPS) that listed all enforceable obligations, as defined in section

5

34167, subdivision (d), and to provide a preliminary draft of an initial recognized obligation payment schedule (ROPS). (§ 34169, subds. (g)(1), (h).) The ROPS is a document that sets forth the minimum payment amounts and due dates of payments required by enforceable obligations for each six month fiscal period. (§ 34171, subd. (h).) Payments not listed in an adopted EOPS, other than payments required to meet obligations with respect to bonded indebtedness, were not authorized. (§ 34167, subd. (h).) The Department of Finance (Finance) must approve the enforceable obligations and funding sources of the enforceable obligations in the ROPS. (§§ 34177, subds. (m)(1) [enacted in Assembly Bill No. 1484 (2011-2012 Reg. Sess.), Stats. 2012, ch. 26, § 11 (Assembly Bill 1484)], (o)(1) [enacted in Stats. 2015, ch. 325, § 6]; see §§ 34169, subd. (i), 34179, subd. (h).)

Part 1.85 (§§ 34170 - 34191) dissolved all redevelopment agencies in California. (§ 34172, subd. (a)(1); Assem. Bill 1X 26, § 7.) That part withdrew from former redevelopment agencies all authority to transact business or exercise powers previously granted under the Community Redevelopment Law. (§ 34172, subd. (b).) Pursuant to *CRA, supra*, 53 Cal.4th 231, Part 1.85 became operative on February 1, 2012. (§ 34170, subd. (a).)

Upon the dissolution of a former redevelopment agency, all remaining authority, rights, powers, duties and obligations previously vested in the former redevelopment agency were transferred to a successor agency. (§ 34173, subd. (b).) Among other things, successor agencies were required to remit unencumbered balances of redevelopment agency funds to the county auditor-controller for distribution to the taxing entities, including the unencumbered balance of the Housing Fund; expeditiously wind

6

down the affairs of the redevelopment agency pursuant to Part 1.85; and prepare a ROPS.[2] (§ 34177, subds. (d), (e), (g), (h), (*l*).)

A successor agency must continue to make payments due for enforceable obligations and perform obligations required pursuant to any enforceable obligation. (Assem. Bill 1X 26, § 7 [section 34177, subds. (a), (c)].) Of relevance to the Coalition's second amended writ petition, "enforceable obligation" means (1) "[l]oans of moneys borrowed by the redevelopment agency for a lawful purpose, to the extent they are legally required to be repaid pursuant to a required repayment schedule or other mandatory loan terms" (§ 34171, subd. (d)(1)(B)), (2) "[p]ayments required by the federal government, preexisting obligations to the state or obligations imposed by state law, other than passthrough payments that are made by the county auditor-controller pursuant to Section 34183, or legally enforceable payments required in connection with the agencies' employees," (*id.* at subd. (d)(1)(C)), (3) "[a]ny legally binding and enforceable agreement or contract that is not otherwise void as violating the debt limit or public policy," (*id.* at subd. (d)(1)(E)), and (4) "[a]mounts borrowed from, or payments owing to, [the Housing Fund] of a redevelopment agency, which had been deferred as of the effective date of the act adding this part; provided, however, that the repayment schedule is approved by the oversight board." (*Id.* at subd. (d)(1)(G).)

Sections 34176 and 34176.1 govern the disposition of the housing assets and functions of the former redevelopment agencies. "The city, county, or city and county that authorized the creation of a redevelopment agency may elect to retain the housing assets and functions previously performed by the redevelopment agency. If a city,

---

[2] Some of the real parties in interest contend that successor agencies are not proper real parties in interest in this matter. We disagree. The second amended writ petition seeks to compel successor agencies to amend the ROPS to identify past, unmet affordable housing requirements. Successor agencies, and not housing successors, bear the responsibility for preparing and submitting the ROPS. (§ 34177, subds. (*l*), (m), (o).)

county, or city and county elects to retain the authority to perform housing functions previously performed by a redevelopment agency, all rights, powers, duties, obligations, and housing assets, as defined in [section 34176,] subdivision (e), excluding any amounts on deposit in [the Housing Fund] and enforceable obligations retained by the successor agency, shall be transferred to the city, county, or city and county [acting as the housing successor]." (§ 34176, subd. (a)(1).)

Except in cases where Finance has issued a finding of completion to a successor agency, any funds transferred to the housing successor together with any funds generated from housing assets must be maintained in a separate Housing Asset Fund. (Assem. Bill 1484, § 9 [§ 34176, subd. (d)].) Assembly Bill 1484 provided that "[f]unds in this account shall be used in accordance with applicable housing-related provisions of the Community Redevelopment Law (Part 1 (commencing with Section 33000))." (*Ibid.*) The Legislature deleted the latter statement in 2013. (Stats. 2013, ch. 796, § 1 [Senate Bill No. 341].) That year, the Legislature added section 34176.1, which provides that funds in the Housing Asset Fund are subject to the provisions of the Community Redevelopment Law relating to the Housing Fund, except as provided in section 34176.1. (Stats. 2013, ch. 796, § 2 [Senate Bill No. 341].) In particular, section 34176.1 provides that after funds a housing successor receives for items listed on the ROPS are expended to meet enforceable obligations, the housing successor must expend all other funds in the Housing Asset Fund for the purposes specified in section 34176.1, subdivision (a). (§ 34176.1, subd. (a).)

BACKGROUND

The Coalition filed a petition for alternative writ of mandate and complaint for declaratory relief against Tracy Sandoval, in her official capacity as then Auditor and Controller of the County of San Diego. The petition named Ana Matosantos, in her official capacity as then Director of Finance, and John Chiang, in his official capacity as then State Controller, as real parties in interest.

8

The operative pleading -- the second amended writ petition -- is against Sandoval, the County of San Diego, and 16 cities in that county which are successor agencies to former redevelopment agencies. The 16 cities are City of Carlsbad, City of Chula Vista, City of Coronado, City of El Cajon, City of Escondido, City of Imperial Beach, City of La Mesa, City of Lemon Grove, City of National City, City of Oceanside, City of Poway, City of San Diego, City of San Marcos, City of Santee, City of Solana Beach, and City of Vista. The real parties in interest are Matosantos, Chiang, and various taxing entities in the County of San Diego that share in any balance of the Redevelopment Property Tax Trust Fund.

Following extensive briefing and oral argument, the trial court denied the second amended writ petition and entered judgment in favor of defendants and real parties in interest.

We granted the application to file an amicus brief submitted by Hitzke Development Corporation, Legal Aid Society of San Diego, Inc., and Public Counsel.

DISCUSSION

I

The Coalition asked us to take judicial notice of analyses of Assembly Bill 1X 26 by the Senate Rules Committee and Committee on Budget. The same documents were before the trial court. Finance does not oppose that request. We grant the Coalition's request for judicial notice of the legislative history materials for Assembly Bill 1X 26.

The Coalition also asked us to take judicial notice of ROPSs submitted by the City of San Marcos, acting as a successor agency, and Finance's review letters for those ROPSs. The Coalition concedes that those documents were not presented to the trial court, but it says Exhibits 2 through 5 show Finance's interpretation of the term "enforceable obligation." Finance opposes judicial notice of those documents because they are new matter and not relevant to the issues on appeal. We deny this portion of the request for judicial notice. Exhibits 2 through 5 are not relevant to the issues on appeal

9

because the issues presented involve statutory interpretation, which, as we have explained, is subject to this Court's independent review. (Evid. Code, § 452, subd. (c); see generally *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 559, fn. 3 [matters not relevant to an issue in the action are not subject to judicial notice]; *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569 [same].)

## II

The Coalition contends the affordable housing requirements that former redevelopment agencies did not complete at the time Assembly Bill 1X 26 became effective are enforceable obligations under section 34171, subdivision (d)(1)(C) because they are obligations imposed by state law.

Section 34171 states that an enforceable obligation includes, among other things: "Payments required by the federal government, preexisting obligations to the state *or obligations imposed by state law*, other than passthrough payments that are made by the county auditor-controller pursuant to Section 34183, or legally enforceable payments required in connection with the agencies' employees . . . ." (§ 34171, subd. (d)(1)(C); italics added.) The Coalition argues the words "obligations imposed by state law" identify obligations separate and distinct from the other obligations referenced in the statute. In support of its argument, the Coalition points to legislative history indicating that "obligations imposed by state law" was listed as a separate item in a Senate Rules Committee analysis of Assembly Bill 1X 26.

We must consider the words "obligations imposed by state law" in the context of the entire statutory scheme. (See *Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012, 1028.) Based on our analysis, we conclude the affordable housing requirements that former redevelopment agencies did not complete by the effective date of Assembly Bill 1X 26 are not enforceable obligations under section 34171, subdivision (d)(1)(C).

10

Section 34171, subdivision (d)(1) expressly references responsibility for bonds, loans, required payments, incurred costs, judgments, settlements, and binding agreements. Subdivision (d)(1)(C) references required payments. Although the Community Redevelopment Law required former redevelopment agencies to expand the supply of low and moderate income housing (§§ 33071, 33334.6, subd. (a), 33334.4, subd. (a), 33333.8, subd. (a)(1), 33334.16, 33413), such responsibilities are not enforceable obligations under section 34171, subdivision (d)(1)(C) because they are not required payments. Having the broad responsibility for expanding the supply of housing is markedly different than being responsible for existing bonds, loans, required payments, incurred costs, judgments, settlements, or binding agreements. We recognize that a successor agency might be responsible for an aspect of affordable housing based on another one of the enumerated items in section 34171, subdivision (d)(1), such as an existing binding agreement; but the successor agency would not be responsible for an aspect of affordable housing as an obligation imposed by state law under section 34171, subdivision (d)(1)(C). For the purposes of this decision we need not define the precise parameters of the obligations imposed by section 34171, subdivision (d)(1)(C); it is sufficient for us to hold that subdivision (d)(1)(C) does not encompass the affordable housing requirements that former redevelopment agencies did not complete at the time Assembly Bill 1X 26 became effective.

The broader statutory scheme supports our conclusion. Under the dissolution law, a "housing successor" assumes the housing function of a former redevelopment agency. (§ 34176, subd. (a)(3).) Assembly Bill 1X 26 discontinued the requirement that redevelopment agencies and successor agencies support low and moderate income housing. (*Macy v. City of Fontana* (2016) 244 Cal.App.4th 1421, 1425, 1432.) Moreover, section 34189 provides that the dissolution law controls over portions of conflicting Community Redevelopment Law. Under the statutory scheme, certain

11

affordable housing requirements remain in place, but the successor agency is not responsible for them as "obligations imposed by state law."

The Coalition cites *Independent Living Center of Southern California v. City of Los Angeles* (C.D. Cal. 2016) 205 F.Supp.3d 1105, but that case does not assist them here. In concluding that a successor agency could be responsible for a former redevelopment agency's alleged disability discrimination as an obligation imposed by state law under section 34171, subdivision (d)(1)(C), the district court said the dissolution law transferred a former redevelopment agency's rights, powers, duties, obligations, and housing assets to the housing successor, but not the former redevelopment agency's litigation responsibilities (which are transferred to the successor agency under the dissolution statute) or the former redevelopment agency's liabilities, such as the payment of monetary damages, costs, or attorney's fees. (*Independent Living,* at pp. 1112, 1113.) In the instant contention, however, the obligations the Coalition is seeking to impose on successor agencies are the affordable housing requirements, not litigation responsibilities, monetary damages, court costs, or attorney's fees. The Coalition's contention lacks merit.

III

The Coalition next contends that money the former redevelopment agencies borrowed from the Housing Fund for payments benefitting schools are enforceable obligations under section 34171, subdivision (d)(1)(B).

Beginning with the 1992-1993 fiscal year, redevelopment agencies were required to remit certain sums to the county Educational Revenue Augmentation Fund (ERAF) or Supplemental Educational Revenue Augmentation Fund (SERAF). (§§ 33680, subds. (c), (d), 33681.7, subd. (a), 33681.9, subd. (a), 33681.12, subd. (a), 33685, subd. (a), 33690, subd. (a), 33690.5, subd. (a); Stats. 1993, ch. 68, § 3 [former § 33681, subd. (a)]; Stats. 1994, ch. 281, § 1 [former § 33681.5, subd. (a)]; *CRA, supra*, 53 Cal.4th at pp. 245, 248 [ERAFs reallocated property taxes from redevelopment agencies to

12

school and community college districts to defray the state's school funding obligations].) In general, redevelopment agencies were authorized to borrow from the Housing Fund to make the ERAF and SERAF payments; however, the amounts borrowed had to be repaid by specified deadlines. (§§ 33681.7, subds. (b), (e), 33681.9, subd. (b), 33681.12, subd. (b), 33685, subd. (b), 33690, subd. (c), 33690.5, subd. (c); Stats. 1993, ch. 68, § 3 [former § 33681, subd. (b)]; Stats. 1994, ch. 281, § 1 [former § 33681.5, subd. (b)].) The amounts borrowed were an indebtedness of the former redevelopment agency payable from the tax increment allocated to the agency. (§§ 33681.7, subd. (e), 33681.9, subd. (e), 33681.12, subd. (e), 33685, subd. (e), 33690, subd. (e), 33690.5, subd. (e); Stats. 1993, ch. 68, § 3 [former § 33681, subd. (e)]; Stats. 1994, ch. 281, § 1 [former § 33681.5, subd. (e)].)

The Coalition urges the application of section 34171, subdivision (d)(1)(B), which provides that an enforceable obligation includes "[l]oans of moneys borrowed by the redevelopment agency for a lawful purpose, to the extent they are legally required to be repaid pursuant to a required repayment schedule or other mandatory loan terms." Finance and other real parties in interest counter that subdivision (d)(1)(G), and not (d)(1)(B), applies to the loans of money for ERAF and SERAF payments because (d)(1)(G) is more specific. Subdivision (d)(1)(G) provides that amounts borrowed from, or payments owing to, the Housing Fund which had been deferred as of the effective date of Assembly Bill 1X 26 are enforceable obligations, provided the repayment schedule is approved by the oversight board.

We conclude section 34171, subdivision (d)(1)(G) is controlling. " 'It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' " (*San Francisco Taxpayers Assn. v. Board of Supervisors*

13

(1992) 2 Cal.4th 571, 577.)  Although moneys borrowed from the Housing Fund for ERAF and SERAF payments may be moneys borrowed by redevelopment agencies for a lawful purpose, within the meaning of subdivision (d)(1)(B), subdivision (d)(1)(G) specifically pertains to moneys borrowed from or owing to the Housing Fund.  Section 34171, subdivision (d)(1)(G) also specifically provides for the disposition of repayments.  (Assem. Bill 1484, § 6; see *id.* at § 9 [§ 34176, subds. (a)(1), (d), (e)(6)(A)].)  As the more specific statute, subdivision (d)(1)(G) applies to moneys the former redevelopment agencies borrowed from the Housing Fund for ERAF and SERAF payments.

The Coalition nevertheless argues section 34171, subdivision (d)(1)(G) does not apply because it refers to loans or payments deferred as of June 29, 2011, but here the ERAF and SERAF payments were not deferred as of that date.  We disagree that the payments were not deferred as of June 29, 2011.  Redevelopment agencies that borrowed from the Housing Fund during the 2002-2006 and 2008-2009 fiscal years pursuant to sections 33680 et seq. were required to repay the loans within 10 years from the dates of those loans.  (§§ 33681.7, subds. (b), 33681.9, subd. (b), 33681.12, subd. (b), 33685, subds. (a), (b).)  Amounts borrowed from the Housing Fund for the 2009-2010 and 2010-2011 fiscal years were required to be repaid by June 30, 2015 and June 30, 2016, respectively.  (§§ 33690, subds. (a)(1)(A), (c), 33690.5, subds. (a)(1)(A), (c).)  The dissolution law stopped the redevelopment agencies from continuing those payments, and thus the payments were deferred as of the effective date of the dissolution law, subject to them becoming enforceable obligations.

Although Finance asserts that section 34171, subdivision (d)(1)(G) is controlling, and Finance and other real parties in interest further appear to concede that amounts borrowed from the Housing Fund for ERAF and SERAF payments are enforceable obligations, they nevertheless contend the Coalition may not *rely* on subdivision (d)(1)(G) in this case because the Coalition's operative pleading did not reference the subdivision.  But the dispositive question is whether the pleading as a whole contains

14

"sufficient facts to apprise the defendant of the basis upon which the plaintiff is seeking relief." (*Perkins v. Superior Court* (1981) 117 Cal.App.3d 1, 6.) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452; See *California State Psychological Assn. v. County of San Diego* (1983) 148 Cal.App.3d 849, 853; *Jones v. Omnitrans* (2004) 125 Cal.App.4th 273, 280.) In general, the rules relating to civil actions apply to writs of mandate. (Code Civ. Proc., § 1109.) Here, the Coalition adequately pleaded that deferrals and loans owed to the Housing Fund are enforceable obligations. While the second amended writ petition did not cite section 34171, subdivision (d)(1)(G), it put defendants and real parties in interest on notice of the Coalition's claim that successor agencies failed to list deferrals and loans owed to the Housing Fund as enforceable obligations in the ROPS. (See generally *Hughes v. Blue Cross of Northern California* (1989) 215 Cal.App.3d 832, 858 [due process considerations preclude consideration of issue not raised in the pleadings].)

Moreover, the parties addressed in the trial court the merits of whether section 34171, subdivision (d)(1)(G) applies. (See *People v. Toomey* (1984) 157 Cal.App.3d 1, 11-12 [even a material variance between pleading and proof is disregarded when the new matter was received and the action was tried on the merits].) The Coalition referenced subdivision (d)(1)(G) in its opening brief on the legal merits. Finance objected that the second amended writ petition did not plead subdivision (d)(1)(G), but it also addressed the claim with regard to subdivision (d)(1)(G) on the merits. And the parties had an opportunity to argue whether subdivision (d)(1)(G) applied at the hearing on the Coalition's writ petition.

The second amended writ petition alleges that not all loans from the Housing Fund were included in the ROPS submitted by the successor agencies. Finance argued in the trial court that successor agencies and Finance treated ERAF and SERAF repayments as enforceable obligations and that the Coalition could not obtain a writ of mandate to

15

compel compliance when successor agencies and Finance were already complying with the statutes. Here, we conclude repayments for loans from the Housing Fund pursuant to sections 33680 et seq. are enforceable obligations under section 34171, subdivision (d)(1)(G), provided the repayment schedule is approved by the oversight board. Because the trial court concluded the Coalition forfeited any claim relating to subdivision (d)(1)(G), it did not determine whether a writ of mandate was proper on the merits. We will remand the matter so that the trial court can consider the merits in light of our analysis and conclusions.

## IV

In addition, the Coalition contends that payments required to be made to the Housing Fund, but deferred, are enforceable obligations under section 34171, subdivision (d)(1)(G). Finance appears to agree.

As we have already explained, section 34171, subdivision (d)(1)(G) provides in pertinent part that payments owing to the Housing Fund which had been deferred as of the effective date of Assembly Bill 1X 26 are enforceable obligations, provided the repayment schedule is approved by the oversight board. We have also already explained how the Coalition's operative pleading was sufficient to rely on section 34171, subdivision (d)(1)(G). We now discuss the additional background relevant to the Coalition's instant claim.

Redevelopment agencies were required to use at least 20 percent of allocated taxes for affordable housing. (§ 33334.2, subd. (a).) From July 1, 2009 to June 30, 2010, a redevelopment agency could suspend all or part of that requirement, but if it did so, the suspended amount had to be repaid to the Housing Fund by June 30, 2015. (§ 33334.2, subd. (k).) Under certain circumstances, less than the required amount could be deposited into the Housing Fund. (§§ 33334.6, subds. (d), (e), 33487, subd. (d).) If less than 20 percent of the allocated increment taxes was deposited in the Housing Fund, the amount equal to the difference between 20 percent of the allocated increment taxes for

16

each affected project and the amount deposited that year constituted a deficit of the project. (§§ 33334.6, subd. (g), 33487, subd. (d).) Deficits are an indebtedness of the redevelopment project to which they related, payable from the allocated increment taxes. (§§ 33334.6, subd. (h), 33487, subd. (d).)

We conclude the amounts suspended but owing to the Housing Fund under the foregoing statutes are enforceable obligations under section 34171, subdivision (d)(1)(G), provided the repayment schedule is approved by the oversight board. We will remand the matter so that the trial court can consider the merits in light of our analysis and conclusions.

V

The Coalition further claims that money owed to the Housing Fund for loans to third parties to develop affordable housing, subsidies provided to home buyers, "residual receipts" and "other amounts" are enforceable obligations under section 34171, subdivision (d)(1)(E).

Section 34171, subdivision (d)(1)(E) provides that an enforceable obligation includes "[a]ny legally binding and enforceable agreement or contract that is not otherwise void as violating the debt limit or public policy." Finance argues the items referenced by the Coalition as part of this contention are accounts receivable, not contracts. We conclude the Coalition does not cite evidence in the appellate record establishing binding and enforceable agreements subject to section 34171, subdivision (d)(1)(E). Accordingly, this contention lacks merit.

VI

The Coalition argues the legislative intent behind the dissolution law supports fulfillment of affordable housing responsibilities imposed on redevelopment agencies before dissolution. To support this proposition, the Coalition cites sections 34163, subdivision (c)(4) and (c)(5), 34164, subdivisions (h) and (i), 34167, subdivision (d),

17

34169, subdivision (a), 34171, subdivision (d)(1) and (d)(3), 34173, subdivision (b), 34176, 34176.1, subdivision (a)(2), and 34177, subdivisions (a), (c) and (g).

The Coalition does not adequately explain how sections 34163, subdivision (c)(4) and (c)(5), 34164, subdivision (h), 34167, subdivision (d), 34169, subdivision (a), 34171, subdivision (d)(1), 34173, subdivision (b), and 34177, subdivisions (a), (c) and (g), establish a legislative intent that a successor agency must necessarily satisfy affordable housing requirements a former redevelopment agency did not complete as of the effective date of Assembly Bill 1X 26. We will not examine these undeveloped claims. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985 (*Maral*).)

As for section 34164, subdivision (i), it says a redevelopment agency shall not "[d]irect or cause the development, rehabilitation, or construction of housing units within the community, unless required to do so by an enforceable obligation." Although the Coalition does not cite evidence in the appellate record establishing binding and enforceable agreements subject to section 34171, subdivision (d)(1)(E) in this case, it is possible that in another case, a successor agency could be responsible for an aspect of affordable housing based on the type of existing binding agreement referenced in section 34171, subdivision (d)(1)(E). But the Legislature did not intend to expand the definition of an enforceable obligation in the manner urged by the Coalition.

In addition, the Coalition references the continued validity of certain agreements to provide housing projects outside project areas, citing section 34171, subdivision (d)(3), which states the unremarkable proposition that certain authorized contracts are not void. However, section 34171, subdivision (d)(3) does not establish a legislative intent that a successor agency must, in the absence of an enforceable obligation, satisfy affordable housing requirements a former redevelopment agency did not complete when Assembly Bill 1X 26 took effect.

18

The Coalition also summarily discusses section 34176, which pertains to the transfer of housing functions previously performed by redevelopment agencies. Again, however, the Coalition does not establish how that section supports its position.

The Coalition also refers us to section 34176.1, subdivision (a)(2), a statute added in 2013 by Senate Bill No. 341. (Stats. 2013, ch. 796, § 2.) The Coalition says the trial court erred in not considering section 34176.1, but the Coalition argued in the trial court that Senate Bill No. 341 did not apply. Thus, even if the trial court had erred in this regard, the Coalition cannot complain of an error it invited. (*Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121.) In any event, section 34176.1, subdivision (a)(2) expressly pertains to a housing successor, and does not establish a legislative intent that a successor agency must necessarily satisfy affordable housing requirements a former redevelopment agency did not complete when Assembly Bill 1X 26 took effect.

VII

The Coalition further argues we must harmonize the definition of an enforceable obligation with sections 34176.1 [funds in the Housing Fund are subject to the Community Redevelopment Law, with certain exceptions] and 34189 [provisions of the Community Redevelopment Law are inoperative to the extent they are dependent on the allocation of tax increment to redevelopment agencies].

The Coalition says the Legislature would not have referred to certain affordable housing requirements in section 34176.1 if those requirements had been eliminated. As we have indicated, although it has not been established in this case, a successor agency could be responsible for an aspect of affordable housing based on the type of existing binding agreement referenced in section 34171, subd. (d)(1)(E). Our conclusions are derived from, and are in harmony with, the broader statutory scheme.

The Coalition also points to section 34189, arguing the section only renders inoperative the requirement to make the 20 percent set-aside to the Housing Fund.

19

The Coalition claims a successor agency can use money in a Real Property Tax Trust Fund established under Assembly Bill 1X 26 to fulfill unmet affordable housing requirements. But section 34183 governs payments from a Real Property Tax Trust Fund. Among other things, section 34183 authorizes the allocation of money for payments listed in the ROPS. (§ 34183, subd. (a)(2).) Section 34183 does not mention affordable housing requirements a former redevelopment agency did not complete at the time Assembly Bill 1X 26 took effect, and it does not establish that successor agencies are necessarily responsible for those affordable housing requirements.

VIII

Finally, the Coalition contends that if the dissolution law does not require successor agencies to satisfy unmet affordable housing requirements, the dissolution law violates the constitutional prohibition against impairment of contracts, because the statutes that gave rise to the affordable housing requirements created implied contracts.

The state and federal Constitutions bar laws impairing the obligation of contracts. (Cal. Const., art. I, § 9; U.S. Const., art. I, § 10, cl. 1.) Analysis of a contracts clause violation involves consideration of whether a valid contract exists and whether that contract has been substantially impaired. (*Walsh v. Board of Administration* (1992) 4 Cal.App.4th 682, 696-697; *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1269.)

As to whether a valid contract exists, contractual rights may be implied from a statute. (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1185-1187.) Whether a legislative act is intended to create contractual rights or merely to declare policy "requires sensitivity to 'the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the [governmental body]. [Citation.] Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the

20

essential powers of a legislative body.' [Citations.] 'Thus, it is presumed that a statutory scheme is not intended to create private contractual or vested rights and a person who asserts the creation of a contract with the state has the burden of overcoming that presumption.' " (*Id.* at pp. 1185-1186.) In general, to imply contractual rights from a statute, the statutory language or circumstances accompanying its passage must clearly evince an intent to create private rights of a contractual nature enforceable against the government. (*Id.* at pp. 1187-1189; see *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 603 [" 'a legislative intent to grant contractual rights can be implied from a statute if it contains an unambiguous element of exchange of consideration by a private party for consideration offered by the state.' "].)

As for the challenged dissolution law, we presume statutes are constitutional. (*California Taxpayers Assn. v. Franchise Tax Bd*. (2010) 190 Cal.App.4th 1139, 1146.) The party asserting a contracts clause violation bears the burden of " 'mak[ing] out a clear case, free from all reasonable ambiguity,' [that] a constitutional violation occurred. [Citation.]' " (*Deputy Sheriffs' Assn. of San Diego County v. County of San Diego* (2015) 233 Cal.App.4th 573, 578.) "To establish an unconstitutional impairment of contract, a party must present facts showing a 'present, specific and substantial impairment of contract attributable' to the change in the law." (*City of Petaluma v. Cohen* (2015) 238 Cal.App.4th 1430, 1442.)

The Coalition argues real parties in interest cannot impair the ability to fulfill past unmet affordable housing requirements by submitting and certifying a ROPS which does not include those obligations. But it does not establish how a law within the statutory scheme created an implied contract, nor does it establish that the dissolution law substantially impaired any such statutory contractual right. (*California Redevelopment Assn. v. Matosantos* (2013) 212 Cal.App.4th 1457, 1492-1494 [rejecting contracts clause claims where the plaintiffs failed to explain how the statute impaired the ability to meet contractual obligations]; *Maral, supra,* 221 Cal.App.4th at pp. 984-985; *Keyes v. Bowen*

21

(2010) 189 Cal.App.4th 647, 656 ["It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf."].)

## DISPOSITION

The judgment is reversed as to money the former redevelopment agencies borrowed from the Housing Fund for payments benefitting schools, and as to certain amounts suspended but owing to the Housing Fund. The matter is remanded to the trial court for further consideration of those issues consistent with this opinion. The judgment is otherwise affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

      /S/      
MAURO, J.

We concur:

   /S/   
BLEASE, Acting P. J.

   /S/   
HOCH, J.