Filed 11/26/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| JAMES MARAL  et al., | C071822 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVCS120144) |
| v. | |
| CITY OF LIVE OAK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sutter County, Perry Parker, Judge.  Affirmed.

John J. Fuery for Plaintiffs and Appellants.

Rich, Fuidge, Morris & Lane, Inc., Brant J. Bordsen and Landon T. Little, for Defendant and Respondent.

In December 2011, the City of Live Oak (the City) passed an ordinance prohibiting the cultivation of marijuana for any purpose within the City.  Plaintiffs sued, contending the ordinance violated the Compassionate Use Act (CUA) (Health & Saf. Code,[1] § 11362.5), the Medical Marijuana Program (MMP) (§ 11362.7 et seq.), equal

---

[1] Further undesignated statutory references are to the Health and Safety Code.

1

protection, and due process. The trial court sustained the City's demurrer and dismissed the complaint. Plaintiffs appeal.

Plaintiffs argue that the CUA and the MMP grant them the right to cultivate medical marijuana. As our Supreme Court recently held in *City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729 at page 753 (*Inland Empire*), the objectives of the CUA and MMP were "modest," and those acts did not create a "broad right" to access medical marijuana. *Inland Empire* held that the CUA and the MMP do not preempt the authority of cities and counties to regulate, even prohibit, facilities that distribute medical marijuana. (*Id*. at p. 762.) The reasoning of *Inland Empire* applies to the cultivation of medical marijuana as well as its distribution, as both are addressed in the CUA and MMP. Accordingly, we conclude the CUA and MMP do not preempt a city's police power to prohibit the cultivation of all marijuana within that city. We shall affirm.

## BACKGROUND

*The Ordinance*

On December 21, 2011, by a vote of 5-0, the City Council of the City adopted Ordinance 538 (Ordinance) regarding the cultivation and sale of medical marijuana within the city limits. The Ordinance added a new Chapter 17.17 to the Live Oak Municipal Code (LOMC).

In adopting the ordinance, the City made several factual findings. It found that the cultivation of medical marijuana had significant impacts or the potential for significant impacts on the City. These impacts included damage to buildings, dangerous electrical alterations and use, inadequate ventilation, increased robberies and other crime, and the nuisance of strong and noxious odors. (LOMC, § 17.17.010, ¶ A.) The City also noted the limited scope of the CUA, which the City said was to provide a criminal defense, and of the MMP, which the City said was to establish a statewide identification program. (*Id*., ¶ B.) The City found that the CUA and MMP had not "facilitated" their stated goals

2

as most use of marijuana was recreational, not medicinal. (*Id.,* ¶ E.) Further, the possession and cultivation of marijuana remained illegal under federal law, and the City did not wish to violate federal law. (*Id.,* ¶ J.)

Section 17.17.040 of the City's Municipal Code prohibits marijuana cultivation: "Marijuana cultivation by any person, including primary caregivers and qualified patients, collectives, cooperatives or dispensaries is prohibited in all zone districts within the City of Live Oak." The Ordinance further provided that if section 17.17.040 was held to be invalid or unconstitutional, marijuana cultivation required a zoning clearance and compliance with numerous criteria. (LOMC, § 17.17.060.)

Section 17.17.070 prohibits medical marijuana collectives, cooperatives, and dispensaries within the City. (LOMC, § 17.17.070.) Again, the Ordinance provided a number of criteria to be met for prohibited medical marijuana collectives, cooperatives, and dispensaries if the prohibition was held invalid. (LOMC, § 17.17.090.)

Any cultivation of marijuana in violation of Section 17.17.040 was declared unlawful and a public nuisance. (LOMC, § 17.17.100.) The Ordinance became effective 30 days after its adoption.

*The Lawsuit*

Plaintiffs, James Maral, individually and as trustee of the Live Oak Patients, Caregivers and Supporters Association, and other individuals, brought suit to enjoin enforcement of the Ordinance.

The relevant complaint on appeal is the second amended complaint. It alleged that the CUA gave seriously ill Californians the *right* to obtain and use marijuana for medicinal purposes. The first cause of action alleged the Ordinance violated the CUA by proscribing "activity that is not only legal, but that is a constitutionally-protected right in California." The second cause of action alleged the Ordinance violated the MMP by proscribing "activity that has been preempted by State law." The third cause of action alleged a violation of equal protection because the Ordinance deprived plaintiffs of the

3

right to cultivate and use medical marijuana, without a rational basis. The fourth cause of action alleged a violation of due process because the Ordinance deprived plaintiffs of the constitutionally-protected right to cultivate and use medical marijuana. The second amended complaint sought a declaration that the Ordinance was invalid, a preliminary and permanent injunction, and attorney fees and costs.

The City demurred to this complaint on the grounds that it failed to state facts sufficient to constitute a cause of action. The City argued there was no constitutional right to cultivate marijuana and the Ordinance had a rational basis.

The trial court sustained the City's demurrer without leave to amend. The court entered an order dismissing the second amended complaint.

## DISCUSSION

### I

### *Standard of Review*

"A demurrer tests the legal sufficiency of factual allegations in a complaint." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42.) The standard of review on appeal from a dismissal after an order sustaining a demurrer is well established. "[W]e review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.]" (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) We give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law. [Citation.]" (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

### II

### *The CUA and MMP*

In 1996, California voters adopted Proposition 215, the CUA. The CUA is intended to "ensure that seriously ill Californians have the right to obtain and use

4

marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana"; to "ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction;" and "encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (§ 11362.5, subds. (b)(1)(A)-(C).)

Rather than granting a blanket right to use marijuana for medical purposes, the CUA only immunizes specific persons from criminal prosecution under two sections of the Health and Safety Code. Thus, the CUA grants only "a limited immunity from prosecution." (*People v. Mower* (2002) 28 Cal.4th 457, 470.) The CUA provides: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).) The CUA creates only a limited defense to certain crimes, "not a constitutional right to obtain marijuana." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 774.)

In 2003, the Legislature passed the MMP; it did so in part to clarify the scope of the CUA and promote its uniform application "among the counties within the state." (Stats. 2003, ch. 875, § 1.) The MMP created a voluntary program for the issuance of identification cards to qualified patients and primary caregivers. (§ 11362.71.)

The MMP also "immunizes from prosecution a range of conduct ancillary to the provision of medical marijuana to qualified patients. [Citation.]" (*People v. Mentch* (2008) 45 Cal.4th 274, 290 (*Mentch*).) "Section 11362.765 accords qualified patients, primary caregivers, and holders of valid identification cards, an affirmative defense to

5

certain enumerated penal sanctions that would otherwise apply to transporting, processing, administering, or giving away marijuana to qualified persons for medical use." (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1171 (*Kruse*).) The MMP provides that specified individuals "shall not be subject, on that sole basis, to criminal liability" under sections 11357 [possession], 11358 [cultivation], 11359 [possession for sale], 11366 [maintaining location for selling, giving away or using controlled substances], 11366.5 [managing location for manufacture or storage of controlled substance], or 11570 ["drug den" abatement law]. (§ 11362.765, subd. (a).) This immunity extends to those "who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes." (§ 11362.775.) The MMP does not, however, "confer on qualified patients and their caregivers the unfettered right to cultivate or dispense marijuana anywhere they choose." (*County of Los Angeles v. Hill* (2011) 192 Cal.App.4th 861, 869 (*Hill*).)

III

*Inland Empire*

In *Inland Empire, supra,* 56 Cal.4th 729, the California Supreme Court considered whether California's medical marijuana laws preempt a local ban on facilities that distribute medical marijuana. The court concluded they did not. (*Id*. at p. 737.)

The court noted the broad language of intent in the CUA--the language on which plaintiffs rely--but found "the operative steps the electorate took toward these goals were modest." (*Inland Empire, supra,* 56 Cal.4th at p. 744.) The CUA only provided certain protections to physicians who recommended medical marijuana to patients and declared that two statutes prohibiting possession and cultivation of marijuana "did not apply" to certain patients and their primary caregivers. (*Ibid*.) Similarly, while the Legislature used some broad language in its declaration of intent in adopting the MMP, "the steps the MMP took in pursuit of these objectives were limited and specific." (*Id.,* at p. 745.) The MMP established a program for identification cards and granted specified persons

6

engaged in specified conduct certain immunities from criminal prosecution. (*Ibid*.) Neither statute created a "broad right" of access to medical marijuana. (*Id*. at p. 753.)

The high court noted that its earlier decisions had "stressed the narrow reach of these statutes." (*Inland Empire, supra,* 56 Cal.4th at p. 745.) In *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, the court found the modest and narrow immunity provisions of the CUA did not require an employer to accommodate an employee's use of medical marijuana. "[T]he only 'right' to obtain and use marijuana created by the [CUA] is the right of 'a patient, or . . . a patient's primary caregiver, [to] possess[ ] or cultivate[ ] marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician' without thereby becoming subject to punishment under sections 11357 and 11358 of the Health and Safety Code." (*Id*. at p. 929.) In *Mentch, supra,* 45 Cal.4th 274, the court declined to expand the statutory definition of a "primary caregiver" to provide immunity to one whose caregiving consisted principally of supplying marijuana and instructing on its use, and who otherwise only sporadically took some patients to medical appointments.

Court of Appeal decisions also recognized "the limited reach of the CUA and the MMP" and held these statutes did not preempt local land use regulations involving medical marijuana. (*Inland Empire, supra,* 56 Cal.4th at p. 749; see *Kruse, supra,* 177 Cal.App.4th 1153 [upholding moratorium on medical marijuana dispensaries]; *Hill, supra,* 192 Cal.App.4th 861 [upholding licensing and permitting for medical marijuana dispensaries].)

Recently, in *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704 (*Browne*), we upheld an ordinance regulating the cultivation of medical marijuana. In doing so, we held that "[n]either the Compassionate Use Act nor the Medical Marijuana Program grants petitioners, or anyone for that matter, an *unfettered* right to cultivate marijuana for medical purposes. Accordingly, the regulation of cultivation of medical marijuana does not conflict with either statute." (*Id*. at p. 711, original italics.)

7

Based on the modest objectives and the narrow scope of both the CUA and the MMP, our Supreme Court found neither statute expressly or impliedly preempted a zoning provision that prohibited a medical marijuana dispensary anywhere within the city limits. (*Inland Empire, supra,* 56 Cal.4th at pp. 752, 762.) The court found that although the MMP exempts "the cooperative or collective cultivation and distribution of medical marijuana by and to qualified patients and their designated caregivers from prohibitions that would otherwise apply under state law," the MMP does not "*mandate* that local governments authorize, allow, or accommodate the existence of such facilities." (*Id.* at p. 759, original italics.) Local decisions to prohibit medical marijuana dispensaries "do not frustrate the MMP's operation." (*Id.* at p. 761.)

IV

*Analysis*

Plaintiffs contend the Ordinance is "an impermissible amendment of the CUA." As we explained in *Browne, supra,* 213 Cal.App.4th at page 717, only the Legislature can amend a statute, so the proper analysis is whether the Ordinance is preempted by state law. Plaintiffs assert that no other municipality has banned cultivation of medical marijuana; they suggest the City could have (and should have) adopted less stringent regulation. But the choices other cities may have made with respect to medical marijuana are irrelevant to our analysis of preemption in this particular case.

Here, plaintiffs contend the Ordinance conflicts with the CUA (and thus is preempted by it), because the CUA created a right to obtain and use medical marijuana. They rely on the first section of the CUA, that the CUA is intended to "ensure that seriously ill Californians *have the right to obtain and use marijuana for medical purposes* where that medical use is deemed appropriate and has been recommended by a physician . . ." (§ 11362.5, subd. (b)(1)(A), italics added.) As we have explained, our Supreme Court soundly rejected this argument in *Inland Empire*.

8

All four causes of action in the second amended complaint are premised on the assertion that the CUA and the MMP create a right to cultivate marijuana. Plaintiffs contend the Ordinance is invalid because it deprives them of the right to cultivate medical marijuana in violation of the CUA, MMP, equal protection, and due process. Because, as we held in *Browne* and our Supreme Court confirmed in *Inland Empire*, there is no right--and certainly no constitutional right--to cultivate medical marijuana, the premise of each cause of action in plaintiffs' second amended complaint fails. They have failed to state a viable cause of action.[2]

In several undeveloped arguments, plaintiffs assert various contentions without analysis or citation to authority. First, they claim "[m]edical marijuana patients, by nature of the fact they are medical patients, have a limitation on a major life activity and are disabled by California's liberal standard. [¶] Consequently, the Plaintiff's Second Amended Complaint does state a full claim for an Equal Protection Violation." Second, they claim the actions of the City Council and other City employees in enacting the Ordinance "were fraught with irregularities that arguably violated the Brown Act, fundamental fairness, the right of citizens to be heard in a public forum." Plaintiffs cite various irregularities in public meetings, such as limiting public participation in meetings to those who supported the Ordinance. They assert that because of those irregularities, the second amended complaint stated a cause of action for violation of due process. Third, plaintiffs contend that the City is "unnecessarily negatively impacting long-cherished property rights" by prohibiting the cultivation of medical marijuana in one's home. They argue, "Qualified medical marijuana patients should have the right to use

_____

[2] The City requests that we take judicial notice of the following facts: Sutter County is comprised of approximately 600 square miles, the majority of which is primarily agricultural land; and the Sutter County Ordinance Code has no prohibitions and restrictions on the cultivation of medical marijuana. Because we find this information unnecessary to resolve the issues on appeal, we deny the request.

9

their homes as they see desire [*sic*], as long as this use does not infringe on the property rights of their neighbors." However, "[a]n appellate court is not required to examine undeveloped claims, nor to make arguments for parties. [Citation.]" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) Our role is to evaluate "legal argument with citation of authorities on the points made." (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Because plaintiffs have failed to make proper arguments on these points, we decline to address them.

## DISPOSITION

The judgment is affirmed. The City shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


         DUARTE         , J.


We concur:


        MAURO        , Acting P. J.


        HOCH        , J.