Filed 9/6/22

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| GROUP XIII PROPERTIES LP, | ) | No. BV 033587 |
| Plaintiff and Respondent, | ) ) | Antelope Valley Trial Court |
| v. | ) ) | No. 20AVUD00201 |
| MICHELLE STOCKMAN, | ) ) | |
| Defendant and Appellant. | ) ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy Chang, Judge. Reversed.

BASTA, Eric M. Post, Daniel J. Bramzon; and Law Offices of Ben Gharagozli, Ben Gharagozli, for Defendant and Appellant Michelle Stockman.

Dennis P. Block & Associates, H.G. Long, Dennis P. Block, for Plaintiff and Respondent Group XIII Properties LP.

\* \* \*

Civil Code section 1962[1] requires owners of rental property to make certain written disclosures to their tenants including, but not limited to, the name, phone number, and usual street address at which personal service may be effectuated for all people who are managers of the premises, owners, or persons authorized to act on behalf of the owner for the purpose of service. (§ 1962, subd. (a)(1).) An owner, or the owner's authorized representative, is required to make the disclosure within 15 days of executing the lease or, if the lease is orally made, within 15 days of the agreement. (§ 1962, subds. (a)(4) & (b).) The information to be disclosed must be kept current such that the required disclosure extends to any successor owner or manager; the successor must comply with the disclosure requirements within 15 days of succeeding the previous owner or manager. (§ 1962, subd. (c).) A successor owner or manager is precluded from evicting a tenant for failure to pay rent if the tenant's default occurs during a period of noncompliance with section 1962. (*Ibid.*)

Plaintiff and respondent Group XIII Properties LP prevailed on an unlawful detainer action against defendant and appellant Michelle Stockman after defendant failed to pay rent. Defendant raised, as an affirmative defense, plaintiff's failure to comply with the disclosure requirements of section 1962. Defendant argued the affirmative defense on two occasions—by moving for nonsuit (before the jury was given the case) and a directed verdict (after the jury was instructed). The trial court ruled plaintiff "substantially complied" with section 1962 and denied defendant's motions.

Defendant contends the trial court should have granted her motions. We reverse the judgment because the successor owner/manager must strictly comply with section 1962; substantial compliance with its provisions is inadequate.

## BACKGROUND

*Facts*

Defendant moved into the property located on Challenger Way in the City of Lancaster in 2013 pursuant to an oral agreement with the owner, Infinity Challenger, LLC (Infinity). The

---

[1]Undesignated statutory references are to the Civil Code.

2

property was subsequently sold by Infinity to plaintiff on June 28, 2019, at which time it was managed by Pama Management, Inc. (Pama).[2]

Change of Management Notices

On July 9, 2019, Pama served defendant a notice of change of management (July notice), advising that IE Rental Homes (IE) was the new management company. The July notice indicated rent was payable to IE by cashier's check or money order only, and that payment could be remitted to an office address in Palmdale; office hours were specified at the bottom of the notice, which was signed by "agent" Michael Garcia.

On December 15, 2019, defendant was served another change of management notice (December notice), this one identifying Bridge Management Inc. (Bridge) as the new management company, effective January 1, 2020. Similar to the July notice, the December notice indicated rent was to be paid to Bridge by cashier's check or money order only, and that payment could be remitted to the same Palmdale office as the July notice; it did not, however, specify the times the office was open, and it did not identify any person as an owner, manager, or agent.

After failing to pay rent for January and February 2020, defendant was served a three-day notice to pay rent in the amount of $2,224.92, or vacate the premises. A payment ledger admitted into evidence showed defendant was current on her rent through the end of December 2019 and that no rent was paid thereafter.

Trial Testimony

Bridge's legal department assistant, Fredy Trujillo, testified to plaintiff's purchase of the property on June 28, 2019, and authenticated the grant deed documenting the transfer. Trujillo also described the procedure for paying rent at the property. "[I]f the manager is present on-site, the tenant always has the right to deliver the rent directly to them. They also have an office, and they could always mail it off as well." (*Sic*.)

Miriam Madrigal, who became the onsite manager after plaintiff purchased the property, served both the July and December notices regarding change of management. Defendant was

---

[2]There is nothing in the record suggesting defendant was served with a notice of change in ownership.

not home when Madrigal attempted service of the July notice, so she posted it on defendant's gate, then returned to the office and mailed a copy to her. Defendant was home at the time Madrigal attempted service of the December notice but she refused to accept it; Madrigal posted this notice as well on defendant's gate and then mailed her a copy. Madrigal handwrote her name and telephone number on both the July and December notices prior to serving them.[3]

Madrigal's apartment was directly across from defendant's unit. Each month, defendant knocked on Madrigal's door and handed her the rent payment in the form of a money order. Madrigal saw defendant on a regular basis, and defendant had her telephone number. Two or three times a week, Madrigal went to Bridge's office in Palmdale to work up to three hours; she had no other work address. There was always someone at Bridge's office from 8:00 a.m. to 6:00 p.m., Monday through Friday, and 10:00 a.m. to 4:00 p.m. on Saturdays. On Sundays, the office door was open, and a receptionist was present from 10:00 a.m. to 4:00 p.m.

Defendant denied ever receiving or being served the July and December notices, either posted on her gate or in her mailbox. She also denied being served the three-day notice to pay rent or quit.

*Motions for Nonsuit and Directed Verdict*

On July 19, 2021, defendant filed a motion for nonsuit arguing plaintiff was not in compliance with section 1962 when the defaulted rent was due because the December notice did not identify Bridge's agent for service of process or provide the agent's name, telephone number and "usual street address."

Plaintiff maintained that, other than the change in management companies, the information on the July and December notices was essentially the same. Plaintiff's counsel (Helen Long) pointed out the July notice identified the agent and that Madrigal testified she handwrote her name and telephone number on the December notice. Long added: "[I]t doesn't have to be an agent for service the [*sic*] process, it has to be an agent willing to accept service. So there's nothing to say that she's not willing to accept process. [¶] She's the manager. . . .

---

[3]Madrigal did not have copies of the notices that reflected her name and telephone number. Without objection by the defense, the version of the notices excluding Madrigal's name and number were admitted into evidence.

4

And coupled with the three-day notice, then, I believe, which also states the name, address, and telephone number for Bridge Management, that that is sufficient because it says 'where personal service may be effective of each person and the person is authorized to ask for service' [*sic*], but it doesn't have to be the agent; it just has to be a person. So that person has been identified. There's an address; there's a phone number. That's all that's necessary." The court gave the impression the issue turned on whether the jury believed Madrigal's testimony that she wrote information on the notice before serving it. In any case, the motion was denied.

On the following day, July 20, 2021, defense counsel (Ben Gharagozli) renewed the motion for nonsuit, arguing that, per *DLI Properties, LLC v. Hill* (2018) 29 Cal.App.5th Supp. 1 (*DLI Properties*), strict compliance with the mandatory notice provisions of section 1962 was required. After observing the December notice made no mention of an agent for service of process, and the office address provided on the notice was not purported to be Madrigal's "usual street address," either on the notice itself or in Madrigal's testimony, Gharagozli concluded: "I don't believe any reasonable jury can find that they've complied with [section] 1962." In response, Long argued there was nothing in section 1962 that required personal service could only be effected at a home address rather than an office address. When Gharagozli countered that the office address on the December notice was described as the address to which rent payments could be sent, Long replied that section 1962 was satisfied because the notice identified "a person, their phone number, and an address." Gharagozli responded: "That's not what the Code says."

At this point, the court, apparently reading from section 1962, stated: "Disclosed therein the name, telephone number, and usual street address at which personal service may be effected of each person who is . . . ," then asked, "Where does it say it actually has to say this is the address at which personal service may be effected?" After some additional back and forth on the issue, the court stated: "But the name, telephone number, and usual street address, if the jury believes she wrote the name and phone number . . . . It just needs to disclose the information. Doesn't say it has to tell them that that's the address for personal -- for service of process."

5

The court indicated it would reread the case law. Defendant completed her testimony, and argument on the renewed motion for nonsuit resumed after the jury left for the day. Long maintained that simply providing the information required under section 1962, however it was labeled or identified, qualified as strict compliance. "She doesn't have to be served at her house. She could be served at her place of business. She doesn't work for anyone else. She works for Bridge Management. That is the address that's on this paperwork, and there is where she could be served. . . . It doesn't matter if somebody works one day a week. It's their office address."

Concluding *DLI Properties* did not hold strict compliance with section 1962 was required—it just "mention[ed] it in passing"—the court ruled: "[T]he totality of the circumstances between what . . . defendant . . . herself knew and the circumstances involved in all of this if the jury believes that there was information written on top [of] the notice . . . You know, the information was known to [defendant] in any event. There's no question in my mind that the evidence establishes that [defendant] knew who . . . Madrigal was by that point in time, and she had the phone number. And so from my perspective, I think there is substantial compliance, and I am denying the motion on that ground." On July 21, 2021, shortly after the jury was given the case, Gharagozli moved for a directed verdict on the same ground as the nonsuit motion; the court denied the motion for the same reasons.

## DISCUSSION

### *Motions for Nonsuit and Directed Verdict*

Defendant contends the court should have granted her motion and renewed motion for nonsuit or issued a directed verdict in her favor. (Code Civ. Proc., §§ 581c, 630.) Denial of a motion for nonsuit or directed verdict may be reviewed on appeal from the judgment. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263 (*Adams*).)

"While made at different times, . . . motions [for nonsuit, directed verdict, and judgment notwithstanding the verdict (JNOV)] are analytically the same and governed by the same rules. [Citation.] The function of these motions is to prevent the moving defendant from the necessity of undergoing any further exposure to legal liability when there is insufficient evidence for an adverse verdict. [Citation.] Put another way, the purpose of motions for nonsuit, directed

6

verdict[] and [JNOV] is to allow a party to prevail as a matter of law where the relevant evidence is already in." (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Dept. of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750, italics omitted.)

***Standard of Review***

"'A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] "In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff'[s] favor.'" [Citations.]'" (*Adams*, *supra*, 68 Cal.App.4th at p. 262.) The trial court is governed by the same standard in ruling on a motion for directed verdict. (*Id.* at p. 263.)

Where, as here, we are tasked with determining whether the change of management notice served on defendant in December 2019 complied with the requirements of section 1962, subdivision (a), and whether subdivision (c)'s prohibition applied to plaintiff, our review involves resolving questions of law based largely on undisputed facts,[4] and we review the trial court's ruling de novo. (*Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 723; see also *Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 946-947.)

***Statutory Interpretation***

In construing section 1962, we must "'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.'" (*De Vries v. Regents of the University of California* (2016) 6 Cal.App.5th 574, 593, some internal quotation marks omitted.) We begin with the statute's actual words, the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not

---

[4]We accept as true Madrigal's testimony that she handwrote her name and phone number on the December notice before serving it. Put another way, her testimony is substantial evidence to support finding that she did so. (See *Adams*, *supra*, 68 Cal.App.4th at p. 262 ["the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded"].)

ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy. [Citations.]" (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

### Section 1962, Subdivisions (a)(1), (b), and (c)

"Any owner of a dwelling structure specified in Section 1961 or a party signing a rental agreement or lease on behalf of the owner shall do all of the following: [¶] (1) Disclose therein the name, telephone number, and usual street address at which personal service may be effected of each person who is: [¶] (A) Authorized to manage the premises. [¶] (B) An owner of the premises or a person who is authorized to act for and on behalf of the owner for the purpose of service of process and for the purpose of receiving and receipting for all notices and demands." (§ 1962, subd. (a).) "In the case of an oral rental agreement, the owner, or a person acting on behalf of the owner for the receipt of rent or otherwise, shall furnish the tenant, within 15 days of the agreement, with a written statement containing the information required by paragraphs (1), (2), and (3) of subdivision (a)." (§ 1962, subd. (b).) [5]

---

[5] In addition to her reliance on subdivision (a)(1) of section 1962, defendant also contends the December notice did not disclose "the usual days and hours" for the personal payment of rent and thus did not comply with the requirements of section 1962, subdivision (a)(2). We decline to reverse the judgment on this ground because this particular defect was not raised in the trial court. ""'"Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." [Citation.]' [Citations.]" (*Family Health Centers of San Diego v. State Dept. of Health Care Services* (2021) 71 Cal.App.5th 88, 98.)

Defendant's position that forfeiture should be ignored given the holding in *Lawless v. Calaway* (1944) 24 Cal.2d 81, 94 (*Lawless*) is not persuasive. *Lawless* was a malpractice case where the mother (appellant) of a deceased child sued the treating physician (respondent). (*Id*. at p. 84.) The trial court's order granting respondent's motion for nonsuit was challenged on appeal. (*Ibid*.) Respondent argued, in part, that the order should be affirmed on a ground that respondent withdrew prior to the hearing in the trial court. (*Id*. at p. 92.) *Lawless* first acknowledged the general rule that an order or judgment will be affirmed if the result is correct but the trial court's reasoning is erroneous. (*Id*. at pp. 93-94.) It then announced a derivative rule for the review of an order granting nonsuit, i.e., respondent's ground

"The information required by this section shall be kept current and this section shall extend to and be enforceable against any successor owner or manager, who shall comply with this section within 15 days of succeeding the previous owner or manager. A successor owner or manager shall not serve a notice pursuant to paragraph (2) of Section 1161 of the Code of Civil Procedure or otherwise evict a tenant for nonpayment of rent that accrued during the period of noncompliance by a successor owner or manager with this subdivision." (§ 1962, subd. (c).)

<u>Notice of Change of Management</u>

The plain terms of section 1962, subdivisions (a)(1) and (c), required that the December notice advising defendant of the change in management from IE to Bridge disclose, in writing,[6] "the name, telephone number, and usual street address at which personal service may be effected" of each person authorized to manage the premises and each person who is an owner of the premises or a person authorized to act on the owner's behalf for the purpose of service of process and for the purpose of receiving all notices and demands. In other words, at a minimum, this mandates the notice: (1) *identify* each person authorized to manage the premises

---

could only be considered "if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion." (*Id*. at p. 94.) In other words, affirmance of an order granting nonsuit on a ground not argued to the trial court is prohibited unless the record establishes the flaw was not correctable by further proof. Respondent's alleged defect did not pass this test and was therefore not considered by the Supreme Court. (*Ibid*.)

We do not read *Lawless* as permitting a party to obtain a *reversal* of the trial court's order *denying* nonsuit on a ground never presented to the trial court, and appellant has cited no case interpreting the Supreme Court's decision that way.

[6]For written leases, the requirements that the disclosures be made in the lease (§ 1962, subd. (a)(1) – (3)), and that copies be provided to the tenant when the lease is executed and on a yearly basis thereafter upon request of the tenant (§ 1962, subd. (a)(4)), indicate the disclosures are to be made in writing. As for oral leases, the requirements that tenants be furnished a written statement containing the disclosures when the agreement is made and on a yearly basis thereafter upon request of the tenant (§ 1962, subd. (b)) impose a similar requirement. With regard to keeping tenants apprised of any changes in the information to be disclosed, the requirement that "any successor owner or manager . . . *shall comply with this section* within 15 days of succeeding the previous owner or manager" (§ 1962,

subd. (c), italics added) mandates that notice of the changes be made within 15 days and, in compliance with "this section," that it be made in writing.

9

and each person who is an owner of the premises or authorized to act on that owner's behalf for the purposes described; and (2) disclose the required information *for each person thus identified*.

Even crediting Madrigal's testimony that she handwrote her name and telephone number on the December notice prior to serving it, there is nothing on the notice that explains her connection to the property, e.g., someone authorized to manage the premises, or a person authorized to act on the owner's behalf. Nor was there any written link between Madrigal and the street address of the Bridge office in Palmdale for the purpose of service of process (or of notices and demands) on Madrigal and/or service of process on behalf of plaintiff. In fact, the Palmdale address is preceded by the language "[y]ou can remit payment to:" suggesting that the sole purpose of the address is limited to receiving rental payments.

Plaintiff's response is to follow the trial court's reasoning and argue substantial compliance. Plaintiff maintains the contents of the December notice (which identified Bridge as the new management company and specified the street address of its office in Palmdale), combined with Madrigal's testimony that she handwrote her name and telephone number on the face of the notice, constituted proof that the notice substantially complied with the requirements of section 1962. We turn to that issue and explain why we are not persuaded.

Substantial Compliance

""'"Substantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute." [Citation.] Where there is compliance as to all matters of substance[,] technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form. When the plaintiff embarks [on a course of substantial compliance], every reasonable objective of [the statute at issue] has been satisfied.' [Citation.] 'Thus, the doctrine gives effect to our preference for substance over form, but it does not allow for an excuse to literal noncompliance in every situation.' [Citation.]" (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1332-1333 (*Troyk*).)

Plaintiff argues substantial compliance buttressed by totality of the circumstances, including those beyond the four corners of the notice. In this respect, plaintiff points not only to the contents of the notice and Madrigal's testimony that she wrote her name and number on

10

the notice, but to her testimony that her position as property manager had not changed with plaintiff's purchase of the property, and that defendant had been paying rent directly to Madrigal who lived across from defendant. Presumably we are to understand from this that the disclosures required under section 1962 may be lessened to some degree for tenants who already know the identity of the property manager and where he or she resides. But it is difficult to excuse as "technical deviation" the failure of a successor owner or manager to make mandated disclosures where the finding of substantial compliance relies on the presumption that the information to be disclosed was already known to the person to be informed. Plaintiff has provided no legal authority to support such an understanding of substantial compliance. (Cal. Rules of Court, rule 8.883(a)(1)(A); *Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985 ["'[A]n appellate court is not required to examine undeveloped claims, nor to make arguments for parties"].)

"Furthermore, the doctrine of substantial compliance does not apply at all when a statute's requirements are mandatory, instead of merely directory. [Citations.] A mandatory statute 'is one that is essential to the promotion of the overall statutory design and thus does not permit substantial compliance. [Citation.]' [Citation.]" (*Troyk*, *supra*, 171 Cal.App.4th at p. 1333, italics omitted.)

As this court wrote in *DLI Properties*, specifically with regard to section 1962 and the disclosures required of successor owners or managers before they can serve a three-day notice for nonpayment of rent or pursue eviction under Code of Civil Procedure section 1161, subdivision (2), the legislative history and analysis of Assembly Bill No. 1953 (2011-2012 Reg. Sess.), which added subdivision (c) to section 1962 in 2012, "makes clear the primary purpose for adding subdivision (c) to section 1962 was to ensure successor owners and/or their managers would notify their tenants where they were to send rent payments so as to avoid evictions based on nonpayment of rent." (*DLI Properties*, *supra*, 29 Cal.App.5th at p. Supp. 11.) "The bill's author explained the need for additional law: 'Purchasers o[f] rental properties, especially foreclosed homes, are increasingly allowing months to go by without notifying tenants where to pay rent. . . . Good tenants end up losing their housing because their landlord failed to comply with the law, unnecessarily creating nonpayment situations. This bill will help

11

prevent unnecessary evictions after ownership changes.' (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1953 (2011–2012 Reg. Sess.) as amended Mar. 29, 2012, p. 3.)" (*Id*. at p. Supp. 10.) Information concerning the identity and address of the manager, owner, and/or owner's agent fosters this objective.

In short, the legislative history of section 1962, specifically of subdivision (c), confirms that the provision "'is one that is essential to the promotion of the overall statutory design and thus does not permit substantial compliance. [Citation.]' [Citation.]" (*Troyk*, *supra*, 171 Cal.App.4th at p. 1333 [holding the statutory requirement that an insurance policy contain a statement of the premium or a basis and rates upon which the final premium is to be determined is mandatory and not subject to substantial compliance].) Because compliance with section 1962 is effectively a jurisdictional prerequisite to an unlawful detainer action, strict compliance with its provisions is required. (See, e.g., *Borsuk v. Appellate Division of Superior Court* (2015) 242 Cal.App.4th 607, 613 [landlord must strictly comply with the jurisdictional prerequisite of a valid three-day notice]; see also *DLI Properties*, *supra*, 29 Cal.App.5th at p. Supp. 8 [in which this court agreed "the evidence established a lack of strict compliance" but determined section 1962 did not apply to the plaintiff and affirmed denial of the defendant's motions on that basis].)

Section 1962 Bar to Eviction by Successor Owner

As discussed at some length in *DLI Properties*, a successor owner or manager is one who succeeds to the rights and duties under an existing lease agreement after a change in the ownership or management of the subject premises, respectively. (*DLI Properties*, *supra*, 29 Cal.App.5th at pp. Supp. 8-9.) "After a property is sold or transferred, the transferee takes subject to the existing lease; this new owner steps into the landlord's shoes and becomes the successor landlord, assuming the terms and conditions of the lease the tenant had with the prior owner. [Citation.]" (*Id*. at p. Supp. 8.) Where, however, a new and separate lease with the defendant is executed, "[d]efendant's tenancy and the rights and obligations of the parties . . .

12

[are] controlled by this new lease" (*id*. at p. Supp. 9) and there is no *successor* owner or manager.[7]

The undisputed evidence demonstrates that plaintiff was a successor owner or landlord. Plaintiff purchased the property from the prior owner, Infinity, on June 28, 2019, at which time defendant's tenancy was governed by an oral agreement with Infinity. Neither plaintiff nor defendant offered any evidence that a new and separate lease was executed or entered into by the parties subsequent to plaintiff's purchase of the property. The evidence further showed that Bridge succeeded IE as the property management company, effective January 1, 2020, as set forth in the December notice dated December 15, 2019, purportedly served on defendant.

Under section 1962, plaintiff as a successor owner, and Bridge as a successor manager, were required to comply with section 1962 "within 15 days of succeeding the previous owner or manager." (§ 1962, subd. (c).) Where, as here, the lease agreement was an oral agreement, compliance with this section consisted of serving the tenant "a written statement containing the information required by paragraphs (1), (2), and (3) of subdivision (a)." (§ 1962, subd. (b).) As detailed above, however, the December notice advising defendant of the change of management from IE to Bridge did not provide the required information in strict compliance with section 1962, subdivision (a)(1). As a result, plaintiff, as a successor owner, was precluded from serving a three-day notice to pay rent or quit (Code Civ. Proc., § 1161, subd. (2)) or "otherwise evict[ing] a tenant for nonpayment of rent that accrued during the period of noncompliance by a successor owner or manager with this subdivision." (§ 1962, subd. (c).) This means plaintiff was barred from doing exactly what it did here—i.e., file a complaint in

---

[7]Plaintiff appears to argue that the December notice contained the required disclosures regarding Bridge, that Bridge was authorized to act on behalf of plaintiff, and that therefore plaintiff was not required to disclose information about itself and was thus not a successor owner. This conclusion does not follow. As noted *ante*, whether plaintiff was a successor owner had to do with whether, after its purchase of the property from Infinity, it entered into a new and separate lease agreement with defendant, not with whether section 1962, subdivision (a)(1), required information be disclosed regarding an authorized agent of plaintiff rather than plaintiff itself. (See *DLI Properties*, *supra*, 29 Cal.App.5th at pp. Supp. 8-9.)

unlawful detainer premised on a three-day notice to pay rent or quit, seeking the payment of back rent that "accrued during the period of noncompliance."[8]

The court erred in denying defendant's motions for nonsuit and a directed verdict.[9]

---

[8]We also reject plaintiff's argument that, because there is nothing in the record to suggest defendant ever attempted to serve papers on plaintiff utilizing the method provided for under section 1962.7—i.e., mailing them by "registered or certified mail . . . to the address at which rent is paid," the bar to evicting a tenant set forth under subdivision (c) does not apply. Plaintiff offers no supporting legal authority for this position. (Cal. Rules of Court, rule 8.883(a)(1)(A); see *Maral v. City of Live Oak*, *supra*, 221 Cal.App.4th at pp. 984-985.)

[9]In light of our disposition, we decline to address whether (1) a business address at which Madrigal was present two or three days per week for no more than three hours on each occasion would have qualified as a "usual street address" for the purpose of service of process and/or receiving "notices and demands" (§ 1962, subd. (a)(1)(B)), and (2) Madrigal also qualified as a successor manager. We reject plaintiff's position that, because Madrigal worked for both IE and Bridge, there was no change in management when IE was replaced by Bridge—an argument for which plaintiff, once again, offers no supporting legal authority.

## DISPOSITION

The judgment is reversed.  Defendant is to recover her costs on appeal.

_____
Kumar, Acting P. J.

We concur:


_____                _____
Ricciardulli, J.                                      Richardson, J.