Filed 5/3/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| H.A., | C099704 |
| Petitioner, | (Super. Ct. No. STK-JD-DP-2022-0000199) |
| v. |  |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, |  |
| Respondent; |  |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY et al., |  |
| Real Parties in Interest. |  |

ORIGINAL PROCEEDING in mandate.  Stay issued.  Petition granted.  Michael J. Mulvihill, Jr., Judge.

Miriam T. Lyell, Public Defender, Rose M. Cardoso and Nelson C. Lu, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Alistair Sheaffer, Deputy County Counsel, for Real Party in Interest San Joaquin County Human Services Agency.

Robert Anthony Aguilar for Real Party in Interest S.P.

Darla Westgate for Real Party in Interest H.A.


This matter is one of many we receive, particularly from San Joaquin County, complaining of lack of compliance with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Petitioner H.A., father of the dependent minors, seeks an extraordinary writ to vacate orders of the juvenile court terminating his visitation and mother's reunification services and setting a hearing pursuant to Welfare and Institutions Code[1] section 366.26. (Cal. Rules of Court,[2] rule 8.452.) Petitioner contends that the inquiry made into the minors' potential Indian heritage in this dependency case was insufficient and failed to comply with the ICWA.

We issued a stay of the section 366.26 hearing in the respondent juvenile court pending resolution of this writ petition and shall now issue a peremptory writ of mandate directing the respondent juvenile court to vacate the ICWA findings and conduct further proceedings to determine whether the ICWA inquiry and notice requirements have been met. We publish this decision to clarify our expectations of counsel and the juvenile court to put an end to the delays caused by these repetitive writ petitions and appeals.

The relevant facts are included in our discussion of the issues.

---

[1]    Undesignated statutory code references are to the Welfare and Institutions Code.

[2]    Further undesignated rule references are to the California Rules of Court.

DISCUSSION

I

*ICWA Error*

On June 14, 2022, the San Joaquin County Human Services Agency (Agency) filed a section 300 petition on behalf of the subject minors based on the parents' substance abuse and domestic violence, and mother's untreated mental health issues. The detention report indicated there was no reason to believe the minors were Indian children, based on the parents' denial of Native American ancestry. Both parents had informed the social worker that they did not have any Native American ancestry and completed ICWA-020 parental notification of Indian status forms (ICWA-020 forms) denying knowledge of any Native American ancestry.

Petitioner contends that, although both parents completed ICWA-020 forms denying knowledge of any Native American ancestry, inquiry of relatives and family members about the minors' potential Indian heritage is necessary to meet the requirements of the ICWA. We agree.

As this court has explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services [agency] have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. ([R]ule 5.481(a);

3

§ 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)

"[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id*., subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) Additionally, the juvenile court is obligated to inquire at the first appearance whether anyone "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Courts have generally agreed that reversal for an initial inquiry error is dependent on showing prejudice, or a miscarriage of justice, but approaches for assessing prejudice have varied. (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698; *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; *In re G.A.*, *supra*, 81 Cal.App.5th 355, rev. granted.) Our Supreme Court has granted review on this issue in *In re Dezi C.*

Mother, who was 21 years old at the time these dependency proceedings commenced, reported she entered the foster care system at the age of 12. She provided family background information to the Agency, including the names of the maternal grandmother and maternal grandfather, who had not been in a relationship during her youth. She has four siblings. Her youngest two siblings live with the maternal grandmother, with whom mother reported she has an "on and off" relationship. The maternal grandmother participated in visitation with the minors after their removal from parental custody. Mother also identified a maternal great-cousin as part of her support system. The social worker reported the maternal great-cousin had expressed interest in placement of the minors. Mother has no relationship with the maternal grandfather. There is no indication that the Agency inquired about possible Native American ancestry from the maternal grandparents, maternal great-cousin, or mother's siblings.

Petitioner, father, did not respond to the Agency's repeated attempts to obtain a family history. He had, however, identified his mother (the paternal grandmother) as someone who sometimes assisted in caring for the minors prior to detention. He had also provided the name of his aunt (the paternal great-aunt), who was caring for two of his other children. The paternal great-aunt and paternal grandmother attended a February 2022 child and family team meeting where it was decided the minors would remain placed with the paternal great-aunt. The paternal grandmother also participated in visitation with the minors. There is no indication that the Agency inquired about possible Native American ancestry from the paternal grandmother or paternal great-aunt.

The Agency filed a status review report on August 22, 2023, recommending family reunification services be terminated. The report noted both parents had signed, and the Agency had filed, ICWA-020 forms denying knowledge of any Native American ancestry. The Agency concluded there was, accordingly, no reason to believe the minors were Indian children within the meaning of the ICWA and included this finding in its proposed findings and orders. The juvenile court adopted the finding that the minors

5

were not Indian children within the meaning of the ICWA as part of its orders setting the section 366.26 hearing.

The parties agree that the Agency and the juvenile court have an affirmative and continuing duty to inquire whether a child is or may be an Indian child, and that under section 224.2, subdivision (b), this inquiry duty includes, but is not limited to, asking the parents *and* extended family members whether the child is, or may be, an Indian child.  It is also undisputed that the Agency had contact with the maternal and paternal grandmothers and the paternal great-aunt, and did not ask them, or any other relatives, about possible Native American ancestry.

The Agency argues that the parents, who denied knowledge of any Native American ancestry, were fully aware of their backgrounds and there is nothing in the record to suggest otherwise or to suggest further inquiry with the relatives would be likely to bear meaningfully upon whether the minors are Indian children.  But mother in this case is relatively young herself and entered the foster care system at the age of 12. She has no relationship with the paternal grandfather and a limited relationship with the maternal grandmother.  While mother did provide some family history of depression, anxiety, and cocaine use, we disagree with the Agency that this demonstrated that mother was "fully aware" of her family members' background and it was therefore unlikely that her relatives would have additional information about possible Native American ancestry. (See, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 548 [the mother was adopted and did not have information about her biological relatives]; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1017 [the "mother, as a foster care product, may not know her cultural heritage"].) Likewise, there is little in the record to support the Agency's position that petitioner, father, was fully aware of his family background, particularly since he did not provide a family history or any information about the paternal grandfather.  Instead, the parents' circumstances and reported family relationships raise concern that they may *not* have

6

been fully informed as to possible Native American ancestry. Yet the Agency made no attempt to inquire further of any of the parents' known relatives.

The Agency also suggests, in passing, that the minors' placement with the paternal great-aunt negates any finding of prejudice in failing to interview extended family in this case, because placement with a member of the child's extended family is in accordance with the ICWA's placement preference. (See *In re Dezi C.*, *supra*, 79 Cal.App.5th at pp. 779-782, rev. granted; see also *In re G.A.*, *supra*, 81 Cal.App.5th at p. 360, rev. granted.) We disregard this undeveloped argument, except to note that it fails to recognize the many other aspects of the ICWA, such as the possibility of transfer to a tribal court or tribal customary adoption. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985 [" '[a]n appellate court is not required to examine undeveloped claims, nor to make arguments for parties' "]; *In re A.W.*, *supra*, 38 Cal.App.5th at p. 662 [the ICWA protects interests of Indian children by permitting tribal participation in dependency proceedings].)

In light of the issue's pendency before our Supreme Court in *In re Dezi C.*, *supra*, 79 Cal.App.5th 769, the record in this case, the remedial purpose underlying the ICWA and related California law intended to protect third party rights, as well as the fact that it was the Agency's and the juvenile court's duty to fully develop the ICWA information (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 785), we apply the analytical framework set forth by our Supreme Court in *In re A.R.* for assessing harm and conclude the error is prejudicial (*In re A.R.* (2021) 11 Cal.5th 234, 252-254 [declining to apply an outcome-focused "likelihood-of-success condition," and explaining that "[f]or a parent whose attorney has incompetently failed to file a timely appeal, the relevant injury is not denial of any specific substantive appellate victory; it is the opportunity to appeal at all"]).

We therefore vacate the juvenile court's finding that the minors are not Indian children within the meaning of the ICWA and remand the case to the juvenile court for

further proceedings to address compliance with the inquiry and notice provisions of the ICWA and to enter new orders regarding the applicability of the ICWA prior to proceeding with the section 366.26 selection and implementation hearing.

II

*Attorney And Juvenile Court Obligations Under The ICWA*

Finally, because we have received an inordinate number of cases arguing inadequacy of the ICWA inquiry based on the Agency's failure to inquire about possible Indian heritage from relatives and have remanded many such cases for correction of ICWA error, we are compelled to comment upon the omissions of both the parties and the juvenile court, and to provide some direction to all involved in these dependency matters.

A

*Parents' And Minors' Counsel*

This is *not* a case of petitioner having unsuccessfully raised the ICWA inquiry issue in the juvenile court and now seeking review of that decision. Like most of the cases in this procedural posture, the adequacy of the ICWA inquiry was never raised in the juvenile court. This court, as part of an order directing petitioner to file a supplement to the petition, invited the parties to indicate what ICWA-related issues and/or requests had been raised or made in the juvenile court since the filing of the petition that identified alleged inadequacies in the ICWA inquiry. No efforts to ensure further ICWA compliance had been undertaken; despite having identified the ICWA issue, the ongoing nature of the proceedings, and the affirmative and continuing duty in the juvenile court to inquire whether a child who is subject to the proceedings is, or may be, an Indian child, petitioner had failed to raise the adequacy of the ICWA inquiry in the juvenile court. (Rule 5.481(a); § 224.2, subd. (a).) The parties have done *nothing* to raise or address the ICWA compliance issue in the juvenile court.

It is true that in general, the forfeiture doctrine does not bar consideration of ICWA inquiry and notice issues not raised in the juvenile court. " 'The notice requirements

8

serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be [forfeit]ed by the parent.' " (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.) But the non-forfeiture rule is *not* an invitation to sit idly by, aware of alleged deficiencies in ICWA compliance, while making no effort to remedy the matter in the juvenile court proceedings. Such practice causes unreasonable delay, wastes appellate court resources, and fails to comport with counsel's duties as officers of the court. (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330 [" 'Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice' "].) While the juvenile court and the Agency are charged with making the appropriate inquiry under the ICWA, it is equally the obligation of the parents' and minors' counsel to promptly bring such matters to the attention of the juvenile court. To be clear, we expect counsel to *promptly* bring any perceived deficiencies in the ICWA inquiry and notice to the attention of the juvenile court, even if the issue is pending on review.[3] We recognize this may, at times, require communication between appellate and trial counsel, but we expect that to occur.

B

*The Juvenile Court*

We also expect the juvenile court will timely perform its duties under the ICWA. The juvenile court is required to make findings as to the applicability of the ICWA.[4]

---

[3]     And if the alleged deficiency is resolved while the matter is pending on review, we expect counsel to *promptly* inform this court.

[4]     We note that, despite our repeated orders finding writ petitions and appeals out of San Joaquin County premature because no ICWA findings and orders have yet been entered, we continue to receive an excessive number of these premature writ petitions and appeals because the juvenile court is not making the required ICWA findings. We further

9

(*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.) It should undertake a meaningful ICWA analysis on the record, not simply adopt proposed findings without further comment—particularly when there has been no previous ICWA discussion on the record. In other words, there should be some evidence in the record that the juvenile court actually considered ICWA compliance and application. So, while we accept the juvenile court's adoption of the proposed findings as an ICWA finding, rather than an implied finding, as suggested by petitioner, the record should, going forward, reflect the juvenile court's meaningful consideration of ICWA compliance and application.

## C

### *The Agency*

Lastly, while the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads" (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053), it has "an affirmative and continuing duty, beginning at initial contact [and continuing thereafter], to inquire whether a child who is subject to the proceedings is, or may be, an Indian child" (*In re G.A.*, *supra*, 81 Cal.App.5th at p. 360, rev. granted) and to include in its reports a discussion of what efforts it undertook to locate and interview family members who might have pertinent information (rule 5.481(a); § 224.2, subd. (a)). We expect the Agency to diligently discharge this duty, rather than rely on its unsupported opinion that its failure to inquire of relatives is not prejudicial.

---

note that, in these instances, counsel is *not requesting* the juvenile court make the required ICWA finding. This is not acceptable. We expect the requisite finding to be made once the information has been provided to the juvenile court and if it has not been made, we expect counsel for the parents, the minors, and the Agency to ask the juvenile court to make the required ICWA findings.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to (1) vacate the finding that the ICWA inquiry and notice provisions were satisfied and that the ICWA does not apply, and (2) order the Agency to conduct further inquiry regarding petitioner's and mother's ancestry including reasonable efforts to inquire of parents' relatives. The respondent court is then directed to enter updated ICWA findings prior to proceeding with a section 366.26 hearing. Having served its purpose, the stay previously issued by this court on January 26, 2024, is vacated upon finality of this opinion. This decision is final forthwith as to this court. (Rule 8.490(b)(2)(A).)

/s/ _____,
ROBIE, Acting P. J.

We concur:

/s/ _____
DUARTE, J.

/s/ _____
KRAUSE, J.

11